**In the United States District Court**
**Southern District of Georgia**
**Augusta Division**

| | | |
|---|---|---|
| Steven N. Caviness, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:09-CV-00098-JRH-WLB |
| vs. | ) | |
| | ) | |
| James R. Holland II and Wettermark, | ) | |
| Holland & Keith, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>Defendants' Alternative Motion for New Trial and</u> <u>Incorporated Memorandum of Law in Support</u>

Plaintiff presented virtually no evidence to support his lone measure of recovery in this case, injury to peace, happiness, and feelings.[1]  The jury was told that it should consider Defendants' wealth.  The last testimony the jury heard before deliberating was that Wettermark, Holland & Keith and Jamie Holland made over $3 million and $1 million, respectively, and Holland owns two homes worth about $1.5 million, two boats, and a BMW and a Lexus.  The jury returned a verdict in Plaintiff's favor for $700,000.00.

Defendants move this Court for a new trial because they were prejudiced by the admission of evidence and the jury instruction regarding their financial status.  Moreover, Defendants were prejudiced by opposing counsel's repeated, blatant violations of this Court's rulings and the jury charges on the ethics rules, which did not address the fiduciary duty owed to Plaintiff and were not supported by the evidence.

---

[1] S*ee* Defendants' Renewed Motion for Judgment as a Matter of Law.

**Plaintiff's claims**

Plaintiff initially sought damages stemming from Defendants' untimely filing of his underlying FELA personal-injury lawsuit against CSX.  In its March 17, 2011 Order, however, this Court ruled that "there is simply insufficient evidence in the record showing that a FELA negligence claim against CSX, if timely brought, would have prevailed."[2]  Thus, all allegations pertaining to the negligent handling of the Underlying Case were resolved in Defendants' favor.[3]  The only remaining issues for trial involved alleged "misconduct after the expiration of the statute of limitations," specifically whether Defendants concealed their error from Plaintiff.[4]

This Court further narrowed the issues for the jury's consideration by partially granting Defendants' Rule 50 motion and determining that Plaintiff's only measure of recovery was for injury to his peace, happiness, and feelings that was caused by Defendants' alleged breaches of "fiduciary duties owed to [Plaintiff] upon discovering the failure to file a lawsuit within the applicable statute of limitations."[5]

**The legal standard for a new trial**

The Court has the discretion to order a new trial for any reason recognized at common law, including substantial, prejudicial errors in the admission of evidence or instructions to the jury.[6]  The Court also has the discretion to grant a new trial based on

---

[2] Order, doc. no. 101, pp. 36-37.
[3] *Id.*, pp. 38 (fn. 35) - 39.
[4] *Id.*, p. 39.
[5] Trial-transcript excerpt no. 5 (attached to this Motion as Ex. 5), p. 120.
[6] Fed. R. Civ. P. 59(a)(1); *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985); *Arnold v. Rayonier,*

prejudicial conduct by counsel that violated prior rulings[7] and where the jury's damages award was excessive.[8]  All of these grounds are present here.

<u>**Argument and Citation of Authority**</u>

I.     **The Court should not have admitted evidence of Defendants' wealth and instructed the jury that it should consider their financial status in awarding damages under O.C.G.A. § 51-12-6.**

A.     **The worldly-circumstances evidence prejudiced the Defendants.**

It is well-established in Georgia that evidence of a party's financial status is <u>never</u> admissible, except in those cases where the party's position or wealth is necessarily involved.[9]  Federal courts have likewise concluded that a defendant's wealth is inadmissible.[10]  Here, Defendants' position or wealth was irrelevant to Plaintiff's breach-of-fiduciary-duty claim.  In other words, Defendants' worldly circumstances did not tend to prove or disprove whether they concealed that the statute of limitations had been missed.

In assessing prejudice, one of the relevant questions for the Court to ask is: how much of an effect did the improperly admitted or excluded evidence have on the

---

*Inc.*, 181 F.R.D. 549, 553 (S.D. Ga. 1998); *Hall v. Norfolk S. Ry. Co.*, 829 F. Supp. 1571, 1579 (N.D. Ga. 1993).

[7] *McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990).

[8] *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999).

[9] *Bailey v. Edmundson*, 280 Ga. 528, 534, 630 S.E.2d 396, 401-02 (2006); *Nw. Univ. v. Crisp*, 211 Ga. 636, 641, 88 S.E.2d 26, 31 (1955); *Inv. Properties Co., Inc. v. Watson*, 278 Ga. App. 81, 85, 628 S.E.2d 155, 160 (2006); *First Fed. Sav. & Loan Ass'n of Atlanta v. Jones*, 173 Ga. App. 356, 357, 326 S.E.2d 554, 555 (1985).

[10] *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Eisenhauer v. Burger*, 431 F.2d 833, 837 (6th Cir. 1970); *Parkins v. Brown*, 241 F.2d 367, 368 n.2 (5th Cir. 1957); *Blankenship v. Rowntree*, 219 F.2d 597, 598 (10th Cir. 1955); *Erickson v. Microaire Surgical Instruments, LLC*, No. C08-5745 BHS, 2010 WL 2196453, at *2 (W.D. Wash. May 27, 2010); *Marvin Johnson, P.C. v. Shoen*, 888 F. Supp. 1009, 1013 (D. Ariz. 1995).

verdict?[11]  Here, the harm to Defendants is clear from the jury's verdict.  Plaintiff offered

scant evidence of mental distress attributable to Defendants' alleged concealment of their

error (as opposed to the error itself, *i.e.* the loss of the FELA claim, which Plaintiff

thought was worth in excess of $145,000.00).  As this Court noted, "there's not an ounce

of evidence as to damages in this case other than Mr. Caviness's testimony that he's had

sleepless nights and stress."[12]  But Plaintiff attributed those "sleepless nights" to "the fact

that [he] lost [his] underlying case . . . against the railroad . . . ."[13]  Any such mental

distress, however, was not compensable under the Court's prior rulings.

In the morning before the case was submitted to the jury, the last evidence the jury

heard was that Wettermark, Holland & Keith grossed over $3 million in 2010 and that

Holland made over $1 million in 2010 and owns two homes worth over $1.5 million, two

boats, and a BMW and a Lexus.[14]  With that testimony fresh in its mind, the jury was

instructed that it should consider Defendants' financial status in determining what

damages to award Plaintiff under § 51-12-6.

No reasonable jury could have concluded that Plaintiff should be compensated

$700,000.00 based upon his vague testimony about anxiety.  Rather, the jury awarded

Plaintiff $700,000.00 because it knew from the evidence it had just heard that Defendants

could afford to pay it and because it believed, based on the Court's instruction, that it was

supposed to consider Defendants' worldly circumstances in awarding damages.  As the

---

[11] *Peat*, 378 F.3d at 1162.
[12] Ex. 5, p. 98.
[13] Trial-transcript excerpt no. 1 (attached to this Motion as Ex. 1), p. 43.
[14] Ex. 5, pp. 23-29, 46-47.

Ninth Circuit explained, "the ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result."[15]  The worldly-circumstances evidence and jury instruction prejudiced the Defendants because it shifted the jury's focus from determining what damages it should award Plaintiff to compensate him for his alleged mental distress to the improper consideration of what damages Defendants could afford to pay Plaintiff. This prejudice warrants a new trial.

As the Georgia Supreme Court has stated, a litigant's "treatment before the bar of Justice should not vary with [its] financial condition."[16]  Accordingly, Georgia courts have concluded that evidence of or reference to a party's wealth is "irrelevant and harmful" and "universally condemned."[17]  There is one exception to this rule.  The only reason for the admission and consideration of a defendant's worldly circumstances is to permit a jury to determine how much of an award is necessary to punish and deter the Defendants.[18]  This is demonstrated by the 1987 amendment to § 51-12-6, which removed a defendant's "worldly circumstances" from the list of factors to be considered in assessing damages for injury to a plaintiff's peace, happiness, and feelings, taken together with *Carlin v. Fuller*, which held that it was reversible error to tell a jury to

---

[15] *Geddes v. United Fin. Group*, 559 F.2d at 560.

[16] *Denton v. Con-Way S. Exp., Inc.*, 261 Ga. 41, 42, 402 S.E.2d 269, 270 (1991) (internal quotation marks and ellipsis omitted), *disapproved of on other grounds by Grissom v. Gleason*, 262 Ga. 374, 418 S.E.2d 27 (1992).

[17] *Camp v. T. E. Cline, Inc.*, 141 Ga. App. 328, 331, 233 S.E.2d 280, 283 (1977); *Cont'l Cas. Co. v. Wilson-Avery, Inc.*, 115 Ga. App. 793, 796, 156 S.E.2d 152, 156 (1967).

[18] *Wilson v. McLendon*, 225 Ga. 119, 121, 166 S.E.2d 345, 346 (1969) ("The reason for allowing evidence of the financial condition of the tortfeasor in an action for punitive damages is that the allowance of a given sum would be a greater punishment to a man of small means than to one possessing larger wealth." (internal quotation marks omitted)).

punish a Defendant in awarding damages under the current version of § 51-12-6.[19]  And it is further shown by the legislature's enactment — in the same legislative session — of § 51-12-5.1(d)(2), which isolated the introduction of evidence of a defendant's wealth to the punitive-damages phase of a bifurcated trial.[20]

Here, this Court followed *Carlin* and instructed the jury that it should not enter an award to punish the Defendants.  But that instruction did not cure the prejudice caused by admission of the evidence of Defendants' wealth.  Rather, it created irreconcilable confusion because the Court told the jury that the only permissible reason for considering the evidence of Defendants' worldly circumstances (punishment and deterrence) was off limits.  Thus, the jury was left to consider the worldly-circumstances evidence for purposes of determining a compensatory-damages award, which is contrary to well-established Georgia and federal law.

**B.   The instruction to the jury to consider Defendants' wealth in assessing damages was an incorrect statement of the law.**

Before it was amended in 1987, O.C.G.A. § 51-12-6 carved out an exception to the rule that a party's financial status was never admissible and permitted the jury to consider the "worldly circumstances of the parties" in awarding damages for an injury to a plaintiff's peace, happiness, or feelings.[21]  Thus, the pre-1987 version of § 51-12-6 directed courts and jurors to consider the defendant's worldly circumstances in order to

---

[19] 196 Ga. App. 54, 55-56, 395 S.E.2d 247, 249 (1990).
[20] *See, e.g.*, *J.B. Hunt Transp., Inc. v. Bentley*, 207 Ga. App. 250, 257-58, 427 S.E.2d 499, 505-06 (1992).
[21] *Westview Cemetery, Inc. v. Blanchard*, 234 Ga. 540, 544, 216 S.E.2d 776, 779 (1975) (quoting pre-amendment version of § 51-12-6 in former Code § 105-2003).

determine how much of an award was needed to punish the defendant and deter him from future misconduct.[22]

The Georgia Court of Appeals commented that the pre-1987 version of § 51-12-6 was "badly written" and "caused nothing but confusion" and emphasized that the "provision allowing consideration of the parties' 'worldly circumstances' . . . is the worst problem."[23]  Shortly thereafter, the General Assembly amended the statute and "deleted the express list of factors to be considered by the jury," including "worldly circumstances of the parties."[24]  The Georgia Court of Appeals determined that worldly-circumstances evidence should no longer be admitted in § 51-12-6 cases because the language authorizing consideration of worldly circumstances was removed from the Code section.[25]

Although the language was removed from the statute, the corresponding pattern jury instruction was never updated.  Over Defendants' objections, the Court gave the obsolete pattern jury instruction, which included the erroneous direction to weigh Defendants' wealth in assessing damages for injury to Plaintiff's peace, happiness, and feelings under § 51-12-6.  Thus, the Court directed the jurors to weigh the same "express

---

[22] *Wilson v. McLendon*, 225 Ga. 119, 121, 166 S.E.2d 345, 346 (1969).

[23] *Brunswick Gas & Fuel Co., Inc. v. Parrish*, 179 Ga. App. 495, 499, 347 S.E.2d 240, 244 (1986).

[24] *Moody v. Dykes*, 269 Ga. 217, 219, 496 S.E.2d 907, 910 (1998).  *See also Ford v. Whipple*, 225 Ga. App. 276, 277, 483 S.E.2d 591, 592 (1997) (recognizing that "the amendment struck the description of factors which the jury could consider").

[25] *Hudson v. State Farm Mut. Auto. Ins. Co.*, 201 Ga. App. 351, 353, 411 S.E.2d 291, 293 (1991).

list of factors" that was deleted from § 51-12-6 in 1987.[26]  That instruction was an incorrect statement of the law because it did not track the amendment to the statute.

The Court's objective in interpreting § 51-12-6 in order to formulate its jury charges should be to determine the drafter's intent.[27]  For example, the Supreme Court has instructed that when "Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."[28]  Under similar principles of statutory construction recognized by Georgia courts, the enactment of legislation raises a presumption that the General Assembly intended some change in the existing law.[29]  As the Georgia Court of Appeals held just two days ago in reversing a judgment and remanding a case for new trial due to the trial court's use of a pattern charge that failed to incorporate an amendment to a statute, "we must presume that the General Assembly meant what it said and said what it meant . . . ."[30]  Therefore, it should be presumed that the General Assembly's amendment of § 51-12-6 to remove the language stating that the parties' worldly circumstances should be weighed demonstrated its intent that worldly circumstances should no longer be considered by the jury.  This Court seemed to acknowledge as much when it stated "that, in fact, the statutory change in 1987 may have

---

[26] *Compare* 10/06/11 rebuttal, closing, and charge transcript, p. 126 (instructing the jury that the "worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be" weighed) *with Westview Cemetery*, 234 Ga. at 544, 216 S.E.2d at 779 (1975) (quoting pre-amendment version of § 51-12-6 in former code § 105-2003, which stated that the "worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed").

[27] *United States v. Grigsby*, 111 F.3d 806, 816 (11th Cir. 1997).

[28] *Pierce County, Wash. v. Guillen*, 537 U.S. 129, 145, 123 S. Ct. 720, 730, 154 L. Ed. 2d 610 (2003).

[29] *Heflin v. State Farm Mut. Auto. Ins. Co.*, 547 F. Supp. 247, 251 (N.D. Ga. 1982).

[30] *Clark v. Rush*, A11A1418, 2011 WL 5141521 at *3 (Nov. 1, 2011).

reflected an intent by the legislature to eliminate the consideration of this evidence by the jury under the new law."[31]

In order to determine whether there was prejudice, the Court should inquire as to "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled."[32]  When "the amount of the verdict is a matter to be measured by the enlightened conscience of impartial jurors, then it is of the utmost importance that the jury shall not have been in the least mislead as to the principles upon which their verdict is to be founded."[33]  Where the jury instructions do not accurately reflect the law and, as a whole, do not correctly instruct the jury such that the Court is "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations," the Court should order a new trial.[34]

The fact that the suggested pattern jury instruction still states that the parties' worldly circumstances should be weighed does not mean that the Court's charge was a correct statement of the law.  The Court expressed concern that Defendants' position that worldly-circumstances evidence is no longer admissible would require it to conclude that the pattern jury charge was wrong.[35]  But that is precisely what the Court should have done when presented with a pattern charge that is inconsistent with a statute.  It is well-established that "[p]attern jury instructions . . . cannot trump the plain language of a

---

[31] Trial-transcript excerpt no. 4 (attached to this Motion as Ex. 4), p. 13.
[32] *Arnold v. Rayonier, Inc.*, 181 F.R.D. 549, 557 (S.D. Ga. 1998) (internal quotation marks omitted).
[33] *Sanders v. Brown*, 178 Ga. App. 447, 448, 343 S.E.2d 722, 724-25 (1986) (citing *Ransone v. Christian*, 49 Ga. 491, 503 (1873)).
[34] *Broaddus v. Florida Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998) (internal quotation marks omitted).
[35] Ex. 4, p. 13.

statute" in determining the law for purposes of instructing the jury.[36]  The Georgia Court of Appeals granted a new trial in a similar situation where the pattern jury instruction read did not reflect amendments to the relevant statute and thus did not provide a correct statement of the law.[37]  Likewise, the pattern jury instruction on § 51-12-6 read by the Court incorrectly stated the law, which warrants a new trial.[38]

### C.    The *Ralston* and *Tahamtan* cases do not affect the analysis.

The Court remarked that "the case law I'm looking at suggests that it -- this statute and the damages retain some punitive nature, and, therefore, while the language may have been removed, I still think if it is punitive in nature, then the worldly circumstances . . . evidence that is appropriate for a punitive damages consideration [is] also appropriate for 51-12-6 . . . ."[39]  But in amending § 51-12-6 to state that punitive damages could not be awarded under that statute, the General Assembly "repealed vindictive damages as a punitive damage and recreated such damages to the peace and happiness as a general damage, measured in the enlightened consciences of impartial jurors."[40]  Moreover, the legislature shifted the function of deterring and punishing defendants to § 51-12-

---

[36] *United States v. Polar*, 369 F.3d 1248, 1253 (11th Cir. 2004).
[37] *Gerald v. State*, 189 Ga. App. 155, 156, 375 S.E.2d 134, 135 (1988).
[38] *See Rand v. Nat'l Fin. Ins. Co.*, 304 F.3d 1049, 1052 (11th Cir. 2002) (awarding new trial where jury instruction misstated Florida law to prejudice of the defendant).
[39] Ex. 5, p. 7.
[40] *Mowell v. Marks*, 277 Ga. App. 524, 528, 627 S.E.2d 141, 144 (2006) (quoting *Little v. Chesser*, 256 Ga. App. 228, 231, 568 S.E.2d 54, 57 (2002)); *see also Land v. Boone*, 265 Ga. App. 551, 554, 594 S.E.2d 741, 743 (2004) (characterizing the current version of § 51-12-6 as a "form of general damages").

10

5.1(d)(2), which was also enacted in the 1987 session and continues to govern the law of punitive damages in Georgia.[41]

Presumably, the case to which this Court referred is *Ralston v. City of Dahlonega*, in which the Georgia Court of Appeals commented that damages under the current version of § 51-12-6 are "in part punitive."[42]  But *Ralston* is flawed insofar as it relied on *Radford v. Mayor & Aldermen of Savannah*,[43] which applied and discussed the pre-amendment version of § 51-12-6.  Moreover, it appears that *Ralston*'s comment that § 51-12-6 is punitive in part merely reflects the fact that the Code section provides a recovery that was disfavored at common law.[44]  In this regard, § 51-12-6 is analogous to the statutory tort of abusive litigation,[45] under which punitive damages cannot be recovered because the cause of action itself is considered a deterrent as it is in derogation of common law.[46]

This Court's decision to admit evidence of Defendants' wealth and instruct the jury to consider that evidence in assessing damages was also swayed by *Tahamtan v. Tahamtan*,[47] as the Court was reluctant to "either ignore the holding of [*Tahamtan*] or

---

[41] *See McClure v. Gower*, 259 Ga. 678, 681-82, 385 S.E.2d 271, 274-75, fn 4 (1989) (noting that § 51-12-5.1 was enacted as part of the Tort Reform Act of 1987 and describing, in a footnote, the pre-amendment version of § 51-12-6); *Mallard v. Jenkins*, 186 Ga. App. 167, 168, 366 S.E.2d 775, 776-77 (1988) (noting that the Tort Reform Act of 1987 created the "new" § 51-12-5.1 and made "substantial changes" to § 51-12-6).

[42] 236 Ga. App. 386, 389, 512 S.E.2d 300, 303 (1999).

[43] 194 Ga. App. 839, 839, 392 S.E.2d 23, 25 (1990) *rev'd sub nom. Mayor & Aldermen of City of Savannah v. Radford*, 261 Ga. 129, 401 S.E.2d 709 (1991).

[44] *See Westview Cemetery*, 234 Ga. at 545, 216 S.E.2d at 780.

[45] O.C.G.A. § 51-7-80, *et seq.*

[46] *Snellings v. Sheppard*, 229 Ga. App. 753, 756-57, 494 S.E.2d 583, 586 (1997).

[47] 204 Ga. App. 680, 420 S.E.2d 363 (1992).

11

determine that the holding in the *Tahamtan* case is erroneous."[48]  But that case merely stands for the proposition that admission of worldly-circumstances evidence during the liability phase of a trial was harmless error where the jury concluded there was no entitlement to punitive damages.  In any event, the only case cited in *Tahamtan* for the proposition that worldly-circumstances evidence is admissible under § 51-12-6 "involved a cause of action arising before the 1987 revision" to the statute.[49]  Thus, *Tahamtan* is flawed because it adopted the reasoning from a case applying the pre-amendment version of § 51-12-6, which expressly authorized the jury to consider worldly circumstances evidence, to a cause of action that was governed by the amended version of § 51-12-6, which no longer contained that authorization.  Every decision since the amendment that has <u>specifically compared the 1987 amendment to § 51-12-6 to the previous version, as opposed to quoting from outdated authority, points to a different result</u>.[50]

### D.   If the Court determines that this is an unsettled area of the law, it should certify the question to the Georgia Supreme Court.

Defendants acknowledge that this Court stated that the question of whether worldly circumstances evidence is still admissible under § 51-12-6 is an "unsettled area

---

[48] Ex. 4, p. 13.

[49] Hertz & Link, Ga. Punitive Damages § 4-34 (2d ed.).

[50] *Moody*, 269 Ga. at 219-20, 496 S.E.2d at 910-11 (noting that the legislature "deleted the express list of factors to be considered by the jury," including worldly circumstances, and implying that the trial court's decisions to admit evidence of defendants' wealth and give the same pattern jury instruction that is at issue in this case would have been deemed erroneous but for defendants' failure to preserve the issues); *Hudson*, 201 Ga. App. at 353, 411 S.E.2d at 293 fn 2 (finding that the language permitting consideration of "worldly circumstances" was removed from the statute by amendment and, therefore, "has no application"); *Holman v. Burgess*, 199 Ga. App. 61, 62-63, 404 S.E.2d 144, 146-47 (1991) (recognizing that evidence of a party's wealth "<u>was</u> admissible" under the old version of § 51-12-6 since the statute formerly provided that "the worldly circumstances of the parties was a factor to be weighed in such actions," and contrasting that with the fact that "evidence of the defendant's financial circumstances may be admissible" under the then-recently enacted punitive-damages statute, § 51-12-5.1).

of the law" and that it would continue to believe the evidence was admissible "until there's some additional guidance from the Georgia Court of Appeals or Supreme Court."[51]  If the Court analyzes the parties' submissions and determines that this issue of law is unsettled, Defendants ask that the Court seek the desired "additional guidance" by certifying the question to the Georgia Supreme Court, which has jurisdiction to "answer any question of law from any . . . federal district or appellate court."[52]

## II.   A new trial can and should be granted based upon misconduct by opposing counsel, including their conscious disregard of this Court's rulings.

This Court must decide whether opposing counsel's prejudicial statements and other misconduct made it reasonably probable that the verdict was influenced by the improper assertions.[53]  Because the trial judge was present and able to assess the impact of the alleged misconduct, decisions by district courts regarding the granting of a new trial are reviewed under a deferential abuse-of-discretion standard.[54]  And while new-trial motions typically focus on acts of counsel, improper prejudicial statements by witnesses may also be considered in ordering a new trial.[55]

Here, even the incomplete trial transcript is replete with prejudicial misconduct by opposing counsel and one of its experts, Paul Bennett.  For example, Plaintiff repeatedly

---

[51] Ex. 5, p. 7.
[52] Ga. Const. art. VI, § 6, ¶ IV.  *See* Ga. R. S. Ct. Rule 46 ("[w]hen it shall appear . . . to any District Court . . . that there are involved in any proceeding before it questions or propositions of the law of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State, such Court may certify such questions or propositions of the laws of Georgia to this Court for instructions"); *see also CSX Transp., Inc. v. City of Garden City, GA*, 391 F. Supp. 2d 1234 (S.D. Ga. 2005) (certifying questions to the Georgia Supreme Court).
[53] *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 282-83 (5th Cir. 1976).
[54] *McWhorter v. City of Birmingham*, 906 F.2d at 677.
[55] *E.g., Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1504-05 (11th Cir. 1985).

violated the Court's rulings that limited the evidence to the alleged misconduct occurring after the statute of limitations expired and allowed only the background evidence that Plaintiff was injured in a train accident,[56] as follows:

- On direct examination, Plaintiff testified that "[t]he train derailed" in November 2004.  The Court sustained Defendants' objection.[57]

- On direct examination, Plaintiff testified that he waited until October 2007 to hire Defendants because of "all the problems I was having with my back."  The Court sustained Defendants' objection.[58]

- Bennett testified that Defendants breached a fiduciary duty by missing the statute of limitations on Plaintiff's FELA claim.  The Court sustained Defendants' objection and warned Bennett.[59]

- Bennett, in response to a non-objectionable question, launched into a lengthy criticism of Defendants' diligence in connection with the missed deadline.[60]

- Bennett testified regarding recovery under the FELA.  Upon Defendants' objection, the Court warned Bennett again.[61]

---

[56] Transcript of the pretrial conference transcript, (attached to this Motion as Ex. 6), pp. 42-43.
[57] Ex. 1, p. 5.
[58] *Id.*, p. 44.
[59] Trial-transcript excerpt no. 2 (attached to this Motion as Ex. 2), pp. 12-13.
[60] *Id.*, pp. 35-38.
[61] *Id.*, p. 43.

- During closing argument, Plaintiff's counsel told the jury that damages should be awarded for Plaintiff's "wounded feelings . . . and the happiness that he should have enjoyed by having his case handled properly."[62]

- During closing argument, Plaintiff's counsel referenced the summary judgment order in the underlying case.  The Court sustained Defendants' objection.[63]

- During closing argument, Plaintiff's counsel asked the jury to consider the harm done by Defendants to Plaintiff's original cause of action.  The Court sustained Defendants' objection.[64]

Plaintiff's counsel also violated this Court's ruling that his primary damages theory — that the delay in informing him of the missed statute of limitations caused a lost opportunity to accept a settlement offer from CSX — failed as a matter of law.[65]  During closing argument, opposing counsel told the jury that Defendants should have called Glen Roland at CSX on the day they realized the statute of limitations had been missed and that it was too late when they finally did.[66]  And Plaintiff's counsel later told the jury that Defendants lost the "house money," *i.e.*, CSX's settlement offer, because of their delay in telling Plaintiff about the missed statute of limitations.[67]

---

[62] Ex. 5, p. 52.
[63] *Id.*, p. 63.
[64] *Id.*, p. 65.
[65] Trial-transcript excerpt no. 3 (attached to this Motion as Ex. 3), pp. 35-37.
[66] Ex. 5, pp. 83-84.
[67] *Id.*, p. 85.

In another example, opposing counsel represented to the Court on Wednesday that "we have no intention to seek punitive damages through argument or any other way."[68] But the next morning, during closing argument, he told the jury it should consider the worldly circumstances evidence to deter and punish Defendants.[69]  The Court sustained Defendants' objection.[70]

Plaintiff's counsel also repeatedly solicited testimony from Bennett that went beyond the scope of his qualifications as an expert, was speculative, and was an improper subject for expert testimony.  Examples of this prejudicial conduct included:

- Bennett's testimony about the causes and extent of Plaintiff's anxiety.  The Court sustained Defendants' objection.[71]

- Bennett's speculation that Glen Roland of CSX would have paid to settle Plaintiff's claim after the statute of limitations.  The Court sustained Defendants' objection.[72]  But Bennett referenced the opinion in response to a later, non-objectionable question.[73]

- Plaintiff's counsel's questions to Bennett about his past experiences with CSX and their practices regarding settlement offers.  The Court sustained Defendants' objection.[74]

---

[68] Ex. 4, p. 67.
[69] Ex. 5, p. 90.
[70] *Id.*, pp. 90-91.
[71] Ex. 3, p. 8.
[72] *Id.*, pp. 14-15.
[73] *Id.*, pp. 46.
[74] *Id.*, pp. 17-18.

- Plaintiff's counsel's questions to Bennett about whether he believed the appeal of the underlying FELA case would have succeeded.  The Court sustained Defendants' objection, albeit after opposing counsel informed the jury that Bennett would say the appeal was "frivolous."[75]

- In his very next question, Plaintiff's counsel again asked Bennett to opine on the merits of the appellate theory in the underlying case.  And the Court again sustained Defendants' objection.[76]

- Later, Bennett yet again referenced the issue when he opined that the appeal would not have succeeded.  The Court sustained a third objection on the point and told the jury to disregard the opinion.[77]

- Plaintiff's counsel suggestively asked Bennett if he found Holland's testimony about the computer entry to be "plausible."  The Court sustained Defendants' objection.[78]

- Plaintiff's counsel asked Bennett if Defendants' delay in informing Plaintiff about the missed statute of limitations was intentional and in bad faith.  The Court sustained Defendants' objection.[79]

These repeated violations and continuous flaunting of the Court's rulings and instructions and solicitation of improper testimony caused substantial prejudice to the Defendants.  Each instance engendered jury confusion and, taken together, the collective

---

[75] *Id.*, pp. 21-24.
[76] *Id.*, p. 26.
[77] *Id.*, p. 42.
[78] *Id.*, pp. 34-35.
[79] *Id.*, p. 44-45.

weight of the prejudice provides a compelling case for a new trial.  In *McWhorter v. City of Birmingham*, the Eleventh Circuit affirmed the grant of a new trial in a retaliation case where defense counsel violated the court's motion in limine ruling by arguing an excluded theory in closing argument and urging the jury to consider excluded evidence.[80] Other circuit courts have concluded that a new trial should be granted where counsel violates the Court's rulings on motions in limine.[81]

Although the Court did its best to keep the trial under control, the excessive verdict reflects that, as the Eleventh Circuit has noted, "curative instructions do not always eradicate the prejudice resulting from" improper conduct of counsel,[82] and "the cumulative effect of the remarks [can go] beyond the point of being curable."[83]  This Court recognized the limited effect of curative instructions in ruling on the parties' motions in limine, stating "if you start allowing in a significant amount of irrelevant evidence to the issue that's involved in the trial then no manner of . . . corrective instructions or whatever you want to call them, are going to be able to undo the damage that can be done."[84]  As the Court predicted, curative instructions were not enough to

---

[80] 906 F.2d at 676.

[81] *See Adams Laboratories, Inc. v. Jacobs Eng'g Co., Inc.*, 761 F.2d 1218, 1225-26 (7th Cir. 1985) (granting new trial, in part, because Plaintiff's counsel violated court's motion in limine ruling); *Brown v. Royalty*, 535 F.2d 1024, 1028-29 (8th Cir. 1976) (granting new trial where prejudicial comments by Plaintiff's counsel violated pre-trial motion in limine rulings); *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 847 (N.D. Okla. 2007) (granting new trial based on counsel's violations of motion in limine rulings); *Lucent Technologies, Inc. v. Extreme Networks, Inc.*, 229 F.R.D. 459, 462 (D. Del. 2005) (same).

[82] *McWhorter*, 906 F.2d at 678.

[83] *Jackson v. Pleasant Grove Health Care Ctr.*, 980 F.2d 692, 697 (11th Cir. 1993), *abrogated on other grounds by Weisgram v. Marley Co.*, 528 U.S. 440, 120 S. Ct. 1011 (2000).

[84] Ex. 6, p. 39.

undo the damage of counsel's improper remarks and solicitation of evidence in violation of the Court's motion in limine rulings.  Thus, the Court should grant a new trial.

## III.   The Court should not have charged the jury on the Georgia Rules of Professional Conduct.

A "litigant is entitled to have the jury instructed as to [its] claims and theories of law if they are legally correct, supported by the evidence, and [timely requested]."[85]  And the failure to correctly charge the jury may serve as the basis for a new trial.[86]

### A.   The instruction on Rule 1.7 did not conform to the evidence.

The Court invited the jury to consider Rule 1.7 in connection with determining whether a conflict of interest existed.  But Bennett specifically testified that no such conflict existed,[87] and the only other indication that Defendants labored under a conflict came from argument of counsel.  Accordingly, the charge on Rule 1.7 was improper, and the prejudice resulting therefrom was magnified by Plaintiff's attorney's emphasis of the conflict issue during closing argument.[88]

### B.   The instructions on Rules 3.3 and 3.4 failed to address Plaintiff's theory of recovery.

The Rules of Professional Conduct do not establish civil liability for attorneys or provide a civil cause of action.[89]  And the Georgia Supreme Court has noted that not all of the Rules "would necessarily be relevant in every . . . action."[90]  Rather, the Rules may

---

[85] *Corey v. Jones*, 650 F.2d 803, 806 (5th Cir. 1981) (decided before creation of the Eleventh Circuit).
[86] *See* FN 35, *supra*.
[87] Ex. 2, p. 47.
[88] Ex. 5, pp. 54, 81, 93.
[89] GA R BAR Rule 4-102, PREAMBLE, SCOPE AND TERMINOLOGY, Comment [18].
[90] *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374, 377, 453 S.E.2d 719, 721 (1995).

be admissible only if they were "intended to protect a person in the plaintiff's position or [were] addressed to the particular harm suffered by the plaintiff."[91]

Plaintiff's requested charge on Rules 3.3 and 3.4 should not have been given because those Rules were not intended to protect Plaintiff or prevent his alleged injury; thus, the instructions did not comport with Plaintiff's theory of recovery.[92]  Rule 3.3 applies only to "the conduct of a lawyer who is representing a client in the proceedings of a tribunal," not to the attorney-client relationship or to the conduct of a litigant who happens to be a lawyer.[93]

And Rule 3.4 speaks only of "duties to adverse parties and counsel to ensure that litigation is conducted fairly," not to the attorney-client relationship.[94]  Moreover, Plaintiff's stated basis for the Rule 3.4 charge was that Defendants wrote a misleading letter to the underlying trial court about whether Durham & Crane would handle an appeal.[95]  As the Court pointed out, it is usual and customary for withdrawing attorneys to provide information about successor counsel to the trial court.  Plaintiff likely would have deemed a failure to tell the underlying trial court about Durham & Crane a breach of a fiduciary duty.  But, most importantly, Plaintiff never put the supposedly offensive letter into the record.[96]  Thus, there was no evidence to support the instruction.

---

[91] *Id.* at 377, 453 S.E.2d at 721-22.

[92] *Compare Baker v. Eicholz*, 2009 WL 62266, No. CV-06-021 (S.D.Ga. January 9, 2009) (where the allegations involved duties flowing from the attorney-client relationship) *with Baxt v. Liloia*, 155 N.J. 190, 203-04, 714 A.2d 271, 278 (1998) (where the Court rejected plaintiff's contention that alleged violations of Rules 3.3 and 3.4 could serve as the basis for a cause of action).

[93] GA R BAR Rule 4-102, RPC Rule 3.3.

[94] GA R BAR Rule 4-102, RPC Rule 3.4, Comment [1].

[95] Ex. 4, p. 35-36.

[96] *Id.*, p. 38.

**IV.    The Court should order a new trial based upon the excessive verdict.**

As the jury's award here was for a state-law claim, the Court must evaluate the propriety of the award under state law.[97]  Under Georgia law, a trial court may order a new trial if "the jury's award of damages is clearly so inadequate or so excessive . . . as to be inconsistent with the preponderance of the evidence."[98]  The 1987 amendment to § 51-12-6 removed the language stating that the "verdict of a jury in such case should not be disturbed, unless the court should suspect bias or prejudice from its excess or its inadequacy,"[99] which indicates that the General Assembly contemplated that § 51-12-6 damages may be reviewed for excessiveness.  In any event, this Court "on a motion for a new trial — unlike a motion for a judgment as a matter of law — . . . may set aside the verdict even though there is substantial evidence to support it. The judge is not required to take that view of the evidence most favorable to the verdict-winner."[100]

The Court should grant Defendants a new trial because the jury's verdict of $700,000.00 was entirely inconsistent with the evidence at trial, which was that Plaintiff suffered "sleepless nights" after learning that the statute of limitations had been missed on a lawsuit he thought was worth over $145,000.[101]  But that mental distress that was not compensable in light of this Court's prior rulings on the legal-malpractice claim.  Plaintiff also testified that he had not seen any medical provider for anxiety or other emotional

---

[97] *Myers v. Cent. Florida Investments, Inc.*, 592 F.3d 1201, 1212 (11th Cir. 2010) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 435, 116 S.Ct. 2211 (1996)) *cert. denied*, 131 S. Ct. 299 (U.S. 2010) *and cert. denied*, 131 S. Ct. 392 (U.S. 2010).

[98] O.C.G.A. § 51-12-12(b).

[99] *Westview Cemetery, Inc. v. Blanchard*, 234 Ga. 540, 544, 216 S.E.2d 776, 779 (1975) (quoting pre-amendment version of § 51-12-6 in former code § 105-2003).

[100] Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2806 (2d ed.).

[101] *Id.*, p. 40.

distress related to this case.[102]   There is simply no construction of this vague evidence that would justify an award of $700,000.00.

## Conclusion

Viewing the outcome of this case in light of the scant evidence of Plaintiff's mental distress, the erroneous charges, and the prejudicial conduct of opposing counsel, it becomes clear that the jury was misled to believe that it should assess a verdict based upon Defendants' wealth and that it should compensate Plaintiff for his lost cause of action and his personal injuries.  This led to an excessive verdict that is not supported by any interpretation of the evidence.  Thus, Defendants ask that the Court grant a new trial.

Respectfully submitted this the 3rd day of November, 2011.

**Carlock, Copeland & Stair, LLP**

By:   /s/ Peter Werdesheim

191 Peachtree Street
Suite 3600
Atlanta, GA 30303
(404) 522-8220

Johannes S. Kingma
Georgia Bar No. 421650
Peter Werdesheim
Georgia Bar No. 748330
*Attorneys for Defendants*

---

[102] *Id.*, p. 40.

## <u>Certificate of Service</u>

I hereby certify a true and correct copy of *Memorandum of Law in Support of*

*Defendants' Motion for New Trial* was served upon the following individuals through the

Court's CM/ECF system, addressed as follows:

Frank J. Beltran, Esq.
Brian R. Smith, Esq.
Atlantic Center Plaza, Suite 2450
1180 W. Peachtree St.
Atlanta, GA 30309

Danny L. Durham, Esq.
Henry N. Crane, III, Esq.
Durham & Crane Law Firm
2350 Washington Rd.
Augusta, GA 30904

This the 3rd day of November, 2011.

**Carlock, Copeland & Stair, LLP**

By:   /s/ Peter Werdesheim
191 Peachtree Street                          Peter Werdesheim
Suite 3600                                          Georgia Bar No. 748330
Atlanta, GA 30303
(404) 522-8220

3576297v.1